UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RICARDO GLOVER,
    Plaintiff,

v.                                        Case No. 14-C-0087

Dr. JONATHAN DICKEY,
    Defendant.

## DECISION AND ORDER

Pro se plaintiff Ricardo Glover brings this equal protection action against Wisconsin Department of Corrections ("DOC") employee Dr. Jonathan Dickey, alleging that Dickey discriminated against Glover by denying his request to participate in a sex offender treatment program called SO-2. Such treatment is, according to Glover, a prerequisite for obtaining parole, and he claims that there was no rational basis for Dickey's denial. Glover contends that Dickey deprived him of his equal protection rights as a class of one. Before me now is Dickey's motion for summary judgment.

# I. FACTS[1]

**The SO-2 Program**

During the relevant time period, Glover was incarcerated at Oshkosh Correctional Instruction, where he was serving time for, among other things, a 1990 conviction for First Degree Sexual Assault. Dr. Dickey, a Licensed Psychologist in the State of Wisconsin since 2004, served as the Psychologist Supervisor at Oshkosh from May 2010 until July 2014 when he left for another position within the DOC. As a Psychological Supervisor, Dickey's responsibilities included the overall administration and supervision of sex offender treatment programming at Oshkosh. In this role, he supervised treatment staff and provided direct psychological services to inmates.

---

[1] These facts are taken from Dickey's Proposed Findings of Fact (ECF No. 68). Glover objects to the Court's consideration of Dickey's Proposed Findings of Fact on the grounds that they are improperly supported by his allegedly defective declaration. See Plaintiff's Response to Defendant's Proposed Findings of Fact (ECF No. 183) ¶ 1a. The court sees no defect in Dickey's declaration in form or substance, as it is based on his personal knowledge and is consistent with contemporaneous documents, such as ECF Nos. 1-1, 1-11, 1-12, and 1-13. See Fanslow v. Chicago Mfg. Center, Inc., 384 F.3d 469, 482-83 (7th 2004) (refusing to reject affidavit in which there was no "inherent inconsistency" with prior testimony); see also S.W.S. Erectors v. Infax, Inc., 72 F.3d 489, 495-96 (5th Cir. 1996) ("When an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment."). Moreover, Glover's Response to Dickey's Proposed Findings of Fact is supported by assertions that do not in fact contradict or otherwise call into question the substance of the Proposed Findings. Rather, Glover's Response consists of repetitious allegations, suppositions, and legal arguments that do not indicate that a Proposed Finding of Fact is subject to dispute. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (requiring the non-moving party to "designate specific facts showing that there is a genuine issue for trial" (internal quotations omitted)). Glover has therefore failed to meet his obligation to put into dispute with admissible evidence Dickey's Proposed Finding of Facts, which are therefore deemed unopposed. See Langenfeld v. Stoelting, Inc., 902 F. Supp. 847, 850 (E.D. Wis. 1995) ("The plaintiff's failure to specifically respond to each proposed finding of fact means that the Court will accept defendant's proposed findings of fact as true and incorporate those into its decision.").

SO-2 is a short-term, eleven-month sex offender treatment program that is designed for inmates who have been identified through risk assessment as having a low to moderate risk for sexual re-offense and low to moderate treatment needs. Upon successful completion of SO-2, a treatment progress report is placed in an inmate's clinical file, and completion is noted for future case planning and classification. Completion of sex offender treatment is required for some parole-eligible inmates before they will be considered for release on parole. The Parole Commission makes this determination. When an inmate becomes parole-eligible or the Parole Commissioner provides an endorsement for treatment, the inmate is then reviewed by Dickey for possible participation in SO-2. This typically occurs when an inmate is within a few years of eligibility for release.

There are a limited number of seats available in each sex offender treatment group and there is a lengthy wait-list to enroll. Inmates who are closest to their release date are considered for enrollment first to try to ensure that they receive treatment before they enter the community. When considering enrolling an inmate in SO-2, Dickey would consider an inmate's release date and would give additional consideration to whether the inmate had received from the Parol Commission an endorsement for treatment. Such an endorsement signals to Dickey that the inmate may be eligible for parole release in the near future.

To Dickey, an endorsement is only valid if it is from the inmate's most recent Parole Commission Action. This is so because, due to the length of time that can pass between meetings with the Parole Commission, an inmate's suitability for treatment can change based on the inmate's mental status and level of motivation.

Dickey states that inmates desiring to participate in SO-2 need to demonstrate a willingness to accept their sexual offense conviction, as inmates cannot be treated for something they claim not to have done. Acceptance is also important to Dickey because inmates are expected to be truthful during treatment and entering treatment could therefore hurt an inmate's chances of a successful legal challenge. Moreover, failure to demonstrate acceptance could negatively affect other inmates who are in treatment and who are taking responsibility for their sexual offending.

Inmates are selected for participation in SO-2 on a case-by-case basis. This occurs through a review of the current wait list and a review of the inmate's relevant records, including, but not limited to, the judgment of conviction, presentence investigation, criminal complaint, and Parole Commission endorsements. An inmate is then interviewed and asked to briefly explain their sexual offense history. Based on the information available, Dickey exercises professional discretion in selecting program participants.

**Glover's Appearances Before the Parole Commission**

In July 2000, Glover received an endorsement from the Parole Commission for sexual offender treatment. In September 2004, however, Glover went before the Parole Commission again, which noted that Glover had been "denied enrollment in the [treatment program] b/c you don't accept responsibility for your actions. During the int[erview], you diverted everything especially when the Commission made attempts to find out why you wont enroll in the pr[ogram]. You kept going back to your case and the discrepancy in the victim['s] statement. It doesn't appear that you have any motivation to enroll in/satisfactorily complete your pr[ograms]." September 2004 Parole Commission Action (ECF No. 72-2) 1. The Commission concluded that "[b]ecause of this, as a sex offender with unmet

essential/offense related pr[ograms], you pose an unreasonable risk to the community."
*Id.*

According to the current Chair of the Wisconsin Parole Commission, Kathy Nagle, if the Commission endorses an inmate for a program, and the inmate then refuses to participate in the program, the endorsement is no longer valid. It is then up to the inmate to request a new endorsement from the Parole Commission and to provide a basis for his previous refusal to participate in the program or to otherwise explain his change in motivation. Given the findings quoted above, the Parole Commission refused to provide Glover with an endorsement for treatment. ECF No. 72-2. Ms. Nagle also states that in 2007, Glover signed a form waiving his right to parole consideration and acknowledging that he would remain parole eligible and could apply for consideration in the future. Waiver/Reapplication of Parole Consideration (ECF No. 72-3). To date, Ms. Nagle reports that Glover has not applied for parole.

**Glover's Request For SO-2 Treatment**

On December 21, 2011, Glover wrote a psychologist at Oshkosh, Dr. Alexander Stolarski, to request enrollment in the SO-2 program, stating that he had put his legal challenges on hold to participate in the program. Dr. Stolarski forwarded Glover's request to Dickey (who had never before had contact with Glover or received a request for treatment from him), and Dickey responded as follows:

> I have received your request to enroll in SO-2 treatment at OSCI. I also reviewed the packet of information that you submitted with your request. This information will be filed for future reference. Enrollment in SO-2 is based upon release date, with additional consideration give to parole endorsements. SO-2 is an 11-month program. Based upon your current release date of 05/28/2019 you should be interviewed for treatment in early 2018.

5

Mem. from Dickey to Glover (Jan. 3, 2012) (ECF No. 1-11).

> On February 1, 2012, Glover responded as follows:
>
> In my December 21, 2011, letter to Physiologist Alexander Stolarski, which was passed to you by him, I informed Dr. Stolarski that I could not enroll in the SOT-2 Program because to my understanding that I could not challenge my conviction while in the SOT-2 Program, this would create a conflict. Is this true? I have an endorsement from the parole commission, which I was given on July 31, 2000 for the SOT-2. For your convenience, I have attached that endorsement to this letter. Just maybe you have an upcoming program that is filled-up; I understand this, th[e]n please enroll me in the next one after that.

Letter from Glover to Dickey (Feb. 1, 2012) (ECF No. 1-12).

> On February 6, 2012, Dickey responded as follows:
>
> This is a response to your letter dated 02/01/2012. I will do my best to answer your questions.
>
> First, you ask whether or not you can enroll in SO-2 if you are challenging your conviction. The answer to this question is no. We will not accept you because it either suggests that 1) you are in denial of certain aspects of your offending or 2) your challenge is legitimate and talking about your offense in treatment could hurt your chances of a successful challenge.
>
> Second, you ask if you can enroll in one for the next SO-2 groups. As I stated in my letter on 01/03/2012, enrollment is based upon release date with additional consideration given to parole endorsements. In your case it would be preferable to see a recent endorsement from parole and a statement from you that you are no longer challenging any part of your sexual assault conviction.

Mem. from Dickey to Glover (Feb. 6, 2012) (ECF No. 1-13).

Dickey had no further communications from Glover regarding enrollment in SO-2 and placed Glover on the wait list. Glover filed an administrative grievance with the DOC, and an investigator found no unlawful discriminatory conduct in Dickey's handling of the matter, concluding that "[p]rofessional judgment is used in this [SO-2] selection process and this office will not second guess [Dickey's] decision." General Report on Inmate

Complaint (Feb. 16, 2012) (ECF No.70-2, at 2). The DOC accepted this finding and dismissed Glover's administrative complaint on May 10, 2012. OOS Report (May 10, 2012) (ECF No. 70-2, at 8). This action followed.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). As the Seventh Circuit has often observed, summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party

must show what evidence it has that would convince a trier of fact to accept its version of events." Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir 1999).

### III. DISCUSSION

Glover's suit asserts a class-of-one equal protection claim. Although "[t]he law concerning 'class of one' equal protection claims is in flux," Del Marcelle v. Brown Cnty. Corp., 680 F.3d 887, 888 (7th Cir. 2012), a class-of-one plaintiff must at least show "intentionally discriminatory treatment lacking a rational basis." Jordan v. Cockroft, 490 Fed. Appx. 813, 815 (7th Cir. 2012) (citing Del Marcelle, 680 F.3d at 899, 913). Here, Dickey's reasons for placing Glover on the wait list for SO-2 treatment, as stated in his written communication of February 6, 2012, were plainly rational and in no way suggest intentionally discriminatory conduct on his part. Accordingly, Dickey is entitled to summary judgment on Glover's equal protection claim.

In his Response to Dickey's Proposed Findings of Fact, Glover makes reference to other inmates who may have been enrolled in SO-2 treatment without having relinquished their legal challenges, who may not have reached eligibility for parole or who may not have received endorsements for treatment from the Parole Commission. Even if true, Glover has failed to show that these inmates were similarly situated to him.

First, Glover does not explain the type of legal challenge other inmates may have been pursuing. A challenge involving a suppression issue, for example, that does not contest the underlying facts of conviction bears little resemblance to Glover's repititious and virulent claim of innocence, including the assertions that "[n]o first-degree sexual assault occurred in this case" and that his victim was a "fabricator." See, e.g., Plaintiff's Response to Defendant's Proposed Findings of Fact (ECF No. 183) at 3-26. If Glover is

8

as innocent as he claims, then sex offender treatment would be wasted on him, and the same conclusion is true if he is simply in denial about his conduct. Moreover, Glover concedes that he included in the packet of information reviewed by Dickey in 2012 the details of his denial of responsibility for the sexual assault on his victim. See id. at 41. As such, Dickey acted rationally in concluding that Glover demonstrated through his refusal to abandon his legal challenge an unwillingness to accept responsibility for his sexual offense, making treatment unlikely to be beneficial.

Second, Glover provided the circumstances of inmates who may have been enrolled in SO-2 prior to their eligibility for parole. One such inmate received this treatment 1996, years before Dickey was assigned to Oshkosh. Id. at 147. Nor is there an indication as to whether the treatment program at that time had the same capacity constraints that existed in 2012. Indeed, Glover admits that this same inmate "applied for entry in [treatment] on numerous occasions since June of 2002, but his entry was denied on the ground he is too far from his mandatory release date" even though the inmate received strong endorsements for treatment from the Parole Commission. Id. at 61-62.

Third, Glover's assertion that other inmates received admission without an endorsement likewise fails to establish that these inmates were similarly asserting their innocence. Glover also overstates the significance of his inability to present a recent endorsement. As Dickey stated, "it would be preferable to see a recent endorsement," but Dickey did not predicate acceptance upon such an endorsement. It is not clear from the record whether Dickey was in fact aware in 2012 about the Parole Commission's refusal to issue an endorsement to Glover in 2004, but the Commission's refusal provides a

powerful example as to why it was rational for Dickey to want an endorsement that was fresher than twelve years old.

Finally, Glover does not assert that any of these other inmates had their acceptance into treatment determined by Dickey. To be sure, Dickey stated that the enrollment criteria for sex offender treatment did not change during his employment at Oshkosh from 2008 to 2014, but he also states that he applies these criteria on a "case-by-case basis using [his] professional judgment." Significantly, not one of the other inmates identified by Glover were accepted into treatment during the period when Dickey was employed at Oshkosh. Circumstances and the value of certain criteria may well have changed over time, and certainly it is possible that different psychologists, employing the same criteria, may have had professional judgments that differed from Dickey's.

What cannot be disputed is that the decision made by Dickey is exactly the type of discretionary decision contemplated by the Supreme Court of the United States in Engquist v. Oregon Dep't of Agriculture, 553 U.S. 591 (2008). In Engquist, the Court eliminated class-of-one claims for government employees in a case involving a former state employee laid off during agency reorganization who alleged she was fired for arbitrary and malicious reasons. Id. at 605. The Court found that some types of state action inherently "involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." Id. at 603. Shortly after the Engquist decision, the Seventh Circuit held that, just as public employees cannot bring class-of-one cases against their employer, so also prosecutorial and sentencing discretion is not to be fettered by class-of-one suits. United States v. Moore, 543 F.3d 891, 899–901 (7th Cir. 2008).

10

Other courts have applied Engquist to bar class of one claims brought by prisoners, including the Western District of Wisconsin. See Knowlin v. Gray, No. 12–cv–926–bbc, 2013 WL 541525, at *2–3 (W.D. Wis. Feb. 13, 2013); Jackson v. Flieger, No. 12–cv–220–bbc, 2012 WL 5247275, at *4 (W.D. Wis. Oct. 23, 2012). The reason for this is that courts are not comfortable second-guessing the discretionary determinations of prison officials in the administration of their duties. As a court in the Western District of Michigan observed, "[t]he class of one equal protection theory has no place in the prison context where a prisoner challenges discretionary decisions regarding security classifications and prisoner placement." Dawson v. Norwood, No. 1:06–cv–914, 2010 WL 2232355, *2 (W.D. Mich. 2010). Reaching the same conclusion, a court in the Eastern District of Pennsylvania explained that "we cannot allow this claim for an Equal Protection violation to proceed to trial. We simply are not prepared to intrude so far into the day-to-day operations of the prison to say that on any given occasion, the prison could have no rational basis for moving a prisoner into administrative segregation or moving a prisoner to a new job." Russell v. City of Philadelphia, No. 08–cv–5442, 2010 WL 2011593, *9 (E.D. Pa. 2010).

Accordingly, Dickey did not violate the equal protection clause by exercising his professional discretion to place Glover on the wait list due to his refusal to accept responsibility for his sexual assault conviction and to his inability to provide a recent Parole Commission endorsement.

**THEREFORE, IT IS ORDERED** that defendant's motion for summary judgment (ECF No. 66) is **GRANTED**.

11

**IT IS FURTHER ORDERED** that plaintiff's motion for emergency relief (ECF No. 178) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to disregard filings (ECF No. 187) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 18th day of September, 2015.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge